IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KLAMATH-SISKIYOU WILDLANDS
CENTER, SISKIYOU REGIONAL
EDUCATION PROJECT, and OREGON
NATURAL RESOURCES COUNCIL,
Oregon non-profit corporations,

   Plaintiffs,

 v.

The BUREAU OF LAND MANAGEMENT,
an agency of the United States
Department of Interior,

   Defendant.
_____

Civil No. 04-1522-CO
Findings and Recommendation

  Plaintiffs bring this action pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 et seq., alleging violations of the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq., and the Federal Lands Policy and Management Act (FLPMA), 43 U.S.C. §§ 1701 et seq.. Plaintiffs seek declaratory and injunctive relief, as well as attorney fees and costs.

Defendant moves to dismiss without prejudice, or in the alternative for a stay of proceedings (#54). Plaintiffs move to strike a portion of defendant's reply brief (#60). Plaintiffs also filed a request for oral argument (#62), but the court finds it unnecessary.

## I. Facts

On February 4, 2000, the Bureau of Land Management ("BLM") issued an Environmental Assessment (EA) for the Granite Horse Project. AR 491-587. BLM subsequently issued two addendums to the Granite Horse Landscape Management Project ("GHLMP") EA on July 18, 2002, and on May 9, 2003. AR at 305, 354.

On July 30, 2003, the BLM issued a Decision Record/Finding of No Significant Impact ("DR/FONSI") for the GHLMP, of which the Granite Horse timber sale ("timber sale") is one component. AR at 225, 491. On August 7, 2003, the Grants Pass Daily Courier published a legal notice advertising the timber sale. AR at 247-250.

On August 20[1], 2003, plaintiff Klamath Siskiyou Wildlands Center ("KS-Wild") submitted a formal protest of the timber sale, and was the sole signatory to the protest letter. AR at 90. On June 30, 2004, BLM denied KS-Wild's protest of the timber sale. AR at 59.

On July 30, 2004, KS-Wild filed a notice of appeal and

---

[1]Plaintiffs allege the formal protest of the timber sale was submitted August 28, 2003.

FINDINGS AND RECOMMENDATION - 2

request for stay of the timber sale with the Interior Board of Land Appeals ("IBLA"), and subsequently filed a statement of reasons in support of its appeal. AR at 18, 34. On September 21, 2004, the IBLA denied KS-Wild's request for a stay, and issued an Order requiring KS-Wild to show cause within 30 days of the Order why KS-Wild's appeal should not be dismissed for failure to demonstrate any legally cognizable interest that would be adversely affected by BLM's decision to deny KS-Wild's protest. AR at 10.

On October 19, 2004, plaintiffs filed a complaint pursuant to the APA, alleging violations of the NEPA, FLPMA and APA. Plaintiffs seek declaratory and injunctive relief, as well as attorney fees and costs (#1). On the same day, the Swanson Group ("Swanson") purchased, and BLM awarded, the timber sale.

On January 13, 2005, all parties filed a joint motion for extension of the briefing schedule in this case in order to facilitate settlement discussions (#43). On February 2, 2005, all parties filed a motion for a second extension (#47). On February 16, 2005, BLM moved for a stay of proceedings to allow for further negotiations, which plaintiffs opposed (#50). A stay was granted until June 7, 2005, when a second status conference was held to revisit the time-line for this case (#51).

On June 3, 2005, the BLM vacated its decision denying the plaintiffs' administrative protest of those portions of the GHLMP

FINDINGS AND RECOMMENDATION - 3

that plaintiffs opposed, including the timber sale, the use of the slashbuster masticator for fuels reduction, and associated road building components (#53). Ex. #1 at 1. BLM did not vacate the entire DR/FONSI for the overall project, because the plaintiffs had indicated in their protest letter that there were certain aspects of the GHLMP that they support, including recreational trail management, special forest products, young stand treatments, wildlife habitat restoration and enhancing burning, and all non-slashbuster fuel hazard reduction treatments. Id., citing plaintiffs' protest letter at 2 (AR at 91).

Two days prior to issuing its June 3, 2005 decision to vacate its denial of plaintiffs' protest, the BLM entered into an agreement with Swanson, the purchaser of the timber sale, whereby Swanson agreed not to begin harvest operations under the sale contract before May 1, 2006. Dkt. #53, Def. Ex. #2. On June 3, 2005, BLM sent a letter to plaintiff KS-Wild informing them of the decision to vacate its denial of plaintiffs' administrative protest of the sale (#53). BLM also sent a copy of the agreement between BLM and Swanson, stating that Swanson would forgo contract damage claims arising through December 15, 2005, so long as BLM completes any supplemental environmental analysis by that date, and allowing Swanson to begin logging on May 1, 2006 (#53).

BLM now moves to dismiss plaintiffs' claims or for a stay of

proceedings, maintaining that the BLM's decision to vacate its denial of plaintiffs administrative protest divests this court of jurisdiction over this case. BLM claims that it has not decided whether to proceed with the timber sale, or if it will proceed with some form of the timer sale only after additional environmental analysis has been completed, and a decision has been issued on how to proceed with the sale - either as modified or originally planned. BLM further claims that if it decides to proceed with the timber sale, it will do so after additional environmental analysis, under a new decision, and after the opportunity for a new administrative protest by plaintiffs.

## II. Legal Standards

The court presumes lack of subject matter jurisdiction until the plaintiff proves otherwise in response to a defendant's Rule 12(b)(1) motion. Kokkonen v. Guardian Life Ins. Co. of America, 511 US 375, 377 (1994); La Reunion Francaise SA v. Barnes, 247 F.3d 1022, 1026 (9th Cir. 2001). "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3rd Cir. 2000).

In reviewing a factual attack, the court may consider matters outside the pleadings without converting the motion to a motion for summary judgment. Holt v. U.S., 46 F.3d 1000, 1003 (10th Cir. 1995). The court may weigh disputed evidence and

determine the facts to evaluate whether jurisdiction exists. <u>Valdez v. U.S.</u>, 837 F.Supp. 1065, 1067 (E.D. Cal 1993). The presumption of truthfulness does not attach to the allegations of plaintiff's complaint or any inferences drawn therefrom. <u>Id</u>.

### III. Discussion

Defendant moves to dismiss without prejudice, or in the alternative for a stay of proceedings, arguing that:

1) plaintiffs' suit is not ripe;

2) defendant's position is not definitive as to whether to cancel the sale or whether to complete additional environmental analysis under NEPA;

3) defendant's actions at this juncture do not have any affect on the plaintiffs' day-to-day activities;

4) judicial intervention at this stage would: interfere with the agency's exercise of its lawful discretion; deny defendant the opportunity to review and if necessary to correct mistakes in the EA, and to apply defendant's expertise in deciding defendants next course of action; and burden the court with an unnecessary lawsuit and result in piecemeal review of defendant's environmental documentation for this sale;

5) withholding court consideration of the plaintiffs' existing lawsuit will not cause any undue hardship to plaintiffs since no logging is taking place;

6) the court will benefit from further factual development of the

administrative record if defendant decides to proceed with the sale after a new EA; and

7) at a minimum the litigation should be stayed to avoid piecemeal litigation, allow defendant to exercise its expertise to correct its mistakes, and because of the lack of hardship or harm to the plaintiffs;

In response, plaintiffs argue that:

1) the case is ripe for judicial review;

2) defendant has not argued that its actions were not final or that plaintiffs' claims were not ripe when plaintiffs filed their complaint;

3) plaintiffs claims are not moot;

4) a stay is not warranted;

5) a stay would harm plaintiffs: there exists the possibility that harvest operations may begin before this Court can render a decision in this case; plaintiffs are prejudiced by the biased process the defendant seeks to undertake at this juncture; plaintiffs would be harmed due to their inability to obtain attorney fees; plaintiffs would be damaged by the precedent set by a stay in this case;

6) there is a lack of hardship for the defendant;

7) granting a stay will complicate the issues in this case and interfere with the orderly course of justice; and

8) issuing a stay would undermine the agency's duty to supply

FINDINGS AND RECOMMENDATION - 7

courts with the "whole record," and it would invite extensive "*post hoc* rationalizations" to cure legal deficiencies in situations where evidence may not physically exist at the time a decision was made.

In reply, defendant argues that:

1) plaintiff's claims are not ripe as BLM's action is not "final";

2) BLM has not consummated its decision-making process;

3) BLM's action has no "direct and immediate effect" on plaintiffs;

4) plaintiffs have failed to exhaust their administrative remedies;

5) plaintiffs' mootness arguments are irrelevant;

6) at a minimum the litigation should be stayed;

7) plaintiffs have not demonstrated any harm from a stay of proceedings;

8) denial of a stay would interfere with the agency's application of its expertise; and

9) judicial efficiency warrants a stay of proceedings.

**Ripeness**

Ripeness is an aspect of the court's subject matter jurisdiction; therefore, lack of ripeness bars the court from hearing a claim. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir.) cert. denied, 493 U.S. 993 (1989). The purpose of the

ripeness doctrine is to prevent the courts, through avoidance of premature judicial review of administrative actions, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way. <u>Ash Creek Mining v. Lujan</u>, 934 F.2d 240, 243 (10th Cir. 1991)(citations omitted). Ripeness is "peculiarly a question of timing," therefore, the court looks "at the facts as they exist today" when evaluating whether the controversy is sufficiently concrete to warrant intervention. <u>Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Bd. of Oil and Gas Conservation of the State of Montana</u>, 792 F.2d 782, 788 (9th Cir. 1986).

Before a court may review an agency decision, it must evaluate the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration. <u>Ash Creek Mining</u>, 934 F.2d at 243 (citation omitted). Fitness is a measure of the interest of the court and the agency in postponing review, and hardship is the measure of the challengers countervailing interest in securing immediate judicial review. <u>Blackfeet National Bank v. Rubin</u>, 890 F.Supp. 48, 52-53 (D.D.C.), <u>affirmed</u>, 67 F.3d 972 (D.C.Cir. 1995). If the interest of the court and the agency in postponing review outweighs the interest of the challengers seeking relief, or if deferring consideration

FINDINGS AND RECOMMENDATION - 9

might eliminate the need for review, then principles of ripeness dictate the postponement of judicial review. Id. at 53 (citation omitted).

In determining the fitness for judicial review, the court considers four factors: 1) whether the issues in the case are purely legal; 2) whether the agency action involved is a final agency action within the meaning of the APA; 3) whether the action has or will have a direct and immediate impact upon the plaintiff; and 4) whether the resolution of the issue will promote effective enforcement and administration by the agency. Id. at 53-54 (citation omitted). There are two conditions that must be met to satisfy the "final agency action" prong: 1) the action must not be of a merely tentative or interlocutory nature, but must mark the consummation of the decision-making process; and 2) the action must be one "from which 'legal consequences will flow'" or "from which 'rights or obligations have been determined.'" Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (citations omitted). Under the hardship prong, it must be shown that withholding judicial review would result in a direct and immediate hardship and would entail more than possible financial loss. Abbot Laboratories v. Gardner, 387 U.S. 136, 152 (1967).

Based on the above factors, the court finds that plaintiffs' claims are not ripe for review. The BLM's position on whether to proceed with the contract is not definitive. The BLM is still in

the process of looking at alternatives, and its actions do not have any affect on the plaintiffs' day-to-day activities; no timber is being cut.  Judicial intervention at this stage would interfere with the BLM's functioning by denying it the opportunity to correct any mistakes in the environmental analysis of the area in question and to apply its expertise in deciding whether to continue under the contract.  Judicial intervention at this stage would also burden the courts with unnecessary lawsuits and could result in piecemeal review of any actual timber sales that do take place and involve this same area.  See Calahan v. United States Bureau of Land Management, No. 03-3042, slip op. at 6 (D. Ore. Sept. 18, 2003).

In this case, withholding court consideration will not cause any undue hardship to the plaintiffs.  The BLM has not decided whether to proceed under the timber sale contract or to cancel the contact and pay damages.  Therefore, plaintiffs claims are contingent upon future events that may or may not occur.  If the BLM decides to proceed under the contract, the plaintiffs will be able to challenge the sale and any under lying environmental documents, and will have the opportunity to administratively challenge the revised EA.  See Id. at 6.

The court would also benefit from further factual development of the administrative record.  It remains unknown what final action will be recommended by the agency, thus, review

at this point would require the court to resolve abstract questions. See Friends of Potter Marsh v. Peters, 371 F.Supp.2d 1115, 1125 (D. Alaska 2005). Further, forcing the BLM to continue in litigation as well as prepare the supplemental environmental analysis and documents would "divert BLM's energies from other projects throughout the country that are in fact more pressing ... and would ultimately operate to the detriment of sound environmental management." Norton v. Southern Utah Wilderness Alliance, 124 S.Ct. 2373, 2384 (2004).

Since the court finds that the claim is not ripe for review, it does not need to address the issue of staying the proceedings. In addition, if the moving party has not contended the claim is moot, then the mootness argument raised is nonresponsive and does not need to be addressed. See City of Arcadia v. United States Envtl. Prot. Agency, 265 F.Supp.2d 1142, 1154 (N.D. Cal. 2003).

Plaintiffs' claims are not ripe for review. Therefore, the court lacks subject matter jurisdiction over plaintiffs' claims, and defendant's motion to dismiss without prejudice should be granted.

### IV. RECOMMENDATION

Based on the foregoing, it is recommended that defendant's motion to dismiss without prejudice, or in the alternative for a stay of proceedings (#54) be granted and a judgment entered dismissing the case without prejudice. Plaintiffs motion to

strike (#60) should be denied as moot.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten days within which to file a response to the objections.* Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this \_\_\_\_12\_\_\_\_ day of July, 2005.

_____/s/_____
UNITED STATES MAGISTRATE JUDGE